[Nos. 17682-3-II; 18310-2-II. Division Two. March 15, 1996.]

MYRNA J. MACDONALD, *Plaintiff*, v. KORUM FORD, *Respondent, and* JOHN C. CAIN, *Appellant*.

---

*John C. Cain,* pro se; *Steven C. Schreiner, Stanley M. Talcott,* and *Talcott & Schreiner, P.S., Inc.*; and *Patricia A. Pethick,* for appellant.

*Kathleen A. Anamosa, Carolyn J. Glenn,* and *Davis Wright Tremaine,* for respondent.

SEINFELD, C.J. — Attorney John Cain appeals the imposition of CR 11 sanctions against him arising out of his representation of Myrna MacDonald in a sexual discrimination and wrongful discharge action against Korum Ford. We affirm in part, reverse in part, and remand the case to the trial court for further proceedings consistent with this opinion.

From May 1987 until her termination on January 4, 1988, MacDonald worked for Korum Ford as a salesperson in its used car division. During this period Korum Ford had an unwritten policy requiring all salespersons to sell 8 to 10 cars a month. During her tenure, MacDonald frequently fell far short of this quota; in November 1987, however, she sold 10.5 cars and received that month's high achievement award.[1] But in December, she sold only 3.5 cars. On January 4, 1988, Robert Huber, Korum Ford's used-car manager, terminated MacDonald due to "lack of production."

Six months later, MacDonald filed a sexual discrimination complaint with the Washington State Human Rights Commission (the Commission). She alleged that Huber had grabbed and kissed her as she left work on New Year's Eve 1987 and fired her in retaliation for rejecting his sexual advance.

MacDonald later added Jack Yaeger, Korum Ford's assistant used-car manager, to her complaint. She claimed that Yaeger, at times, touched her inappropriately, positioned himself in the office hallway so that she would brush against him when she passed, and used inappropriate language in her presence. MacDonald also claimed that in December, Yaeger and Huber made it difficult for her to sell cars.

---

[1]The .5 of a car indicates that credit for one sale was shared with another salesperson.

In the spring of 1990, MacDonald withdrew her complaint with the Commission and retained Cain as her attorney. In August 1990, Cain filed a complaint in superior court against Korum Ford, alleging sexual discrimination and wrongful discharge pursuant to RCW 49.60.180.[2] Specifically, it alleged that (1) Huber and Yaeger had subjected MacDonald to "sexual advances and harassment," (2) that Korum Ford had denied MacDonald privileges available to other similarly situated employees and generally subjected her to discriminatory work conditions, and (3) that this discriminatory treatment prevented her from being promoted to other departments within Korum Ford and ultimately resulted in her discharge.

However, in August 1991, MacDonald provided deposition testimony that severely undermined the factual bases for her claims. Nonetheless, Cain continued to prosecute the case: moving to amend the pleadings and join additional parties, conducting several depositions, seeking additional discovery, and ultimately opposing Korum Ford's summary judgment motion.

During this same period, Korum Ford's attorney responded to Cain's motion to amend the pleadings and, also, began preparing a summary judgment motion. In September 1992, Korum Ford substituted attorney one with attorney two. Attorney two familiarized herself with the case, conducted discovery, successfully moved to compel discovery, and prepared and organized the case for trial.

In April 1993, 19 months after MacDonald's deposition, Korum Ford moved for summary judgment of dismissal.

---

[2]RCW 49.60.180 provides, in relevant part:

It is an unfair practice for any employer:

. . . .

(2) To discharge or bar any person from employment because of . . . sex . . . .

(3) To discriminate against any person in compensation or in other terms or conditions of employment because of . . . sex . . . .

Its supporting brief relied heavily on MacDonald's deposition testimony. The trial court granted Korum Ford's motion.

Korum Ford then moved for attorney fees and costs pursuant to RCW 4.84.185 (frivolous actions) and CR 11. It argued that after MacDonald's deposition, Cain knew or should have known that further pursuit of MacDonald's claims was frivolous. The trial court granted Korum Ford's motion and imposed a $25,727.17 sanction for attorney fees against Cain and MacDonald, an amount equal to Korum Ford's legal expenditures from the date of MacDonald's deposition.[3]

Cain and MacDonald moved for reconsideration of costs and sanctions. The trial court denied the motion and awarded an additional $1,478 in attorney fees to Korum Ford. MacDonald then hired a new attorney who was able to obtain relief from the judgment against her, leaving Cain solely responsible for the entire sanction.

In its findings of fact and conclusions of law the trial court found: (1) after MacDonald's deposition, Cain continued to rely "almost exclusively" on MacDonald's assurances that she could provide witnesses and develop evidence supporting her case; (2) Cain failed to conduct an "adequate independent investigation"; and (3) Cain failed to advise his client, as the evidence developed, that she should abandon the litigation. The trial court also ruled that at the time MacDonald filed her lawsuit, "it was reasonable to believe .that [she] may have a meritorious claim," but that after her deposition, Cain knew or should have known that the facts, the existing law, or a good faith extension of the existing law could not justify further prosecution of her claims. Accordingly, the trial court ruled that Cain's decision to continue to prosecute the

---

[3]Attorney one represented Korum Ford from the date of the complaint through August 1992. He billed Korum $6,634.65 for his services and expenses from September 1991 to August 1992. Attorney two handled all subsequent litigation, including this appeal. She charged Korum $19,265.97 for her representation and expenses through summary judgment.

case after the deposition was frivolous and sanctionable under CR 11.

## ANALYSIS

CR 11 provides:

> Every pleading, motion, and legal memorandum of a party represented by an attorney shall be dated and signed by at least one attorney of record in the attorney's individual name, whose address and Washington State Bar Association membership number shall be stated. . . . The signature . . . of an attorney constitutes a certificate by the . . . attorney that the . . . attorney has read the pleading, motion, or legal memorandum; that to the best of the . . . attorney's knowledge, information, and belief, formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or legal memorandum is signed in violation of this rule, the court, upon motion or upon its own initiative, shall[4] impose upon the person who signed it . . . an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or legal memorandum, including a reasonable attorney fee.

■ CR 11 deals with two types of filings: those lacking factual or legal basis (baseless filings), and those made for improper purposes. *Hicks v. Edwards*, 75 Wn. App. 156, 162, 876 P.2d 953 (1994), *review denied*, 125 Wn.2d 1015 (1995) (citing *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 217, 829 P.2d 1099 (1992)). This case concerns a baseless filing. A filing is "baseless" when it is "(a) not well grounded in fact, or (b) not warranted by (i) existing law

---

[4]Effective September 17, 1993, the Supreme Court amended CR 11 to state "may" rather than "shall." *See* 122 Wn.2d 1102. We construe the former version of the statute, which was in effect at the time Korum Ford brought its CR 11 motion. All citations to "CR 11" refer to former CR 11.

or (ii) a good faith argument for the alteration of existing law." *Hicks*, 75 Wn. App. at 163.

■ The purpose behind CR 11 "is to deter baseless filings, not filings which may have merit." *Bryant*, 119 Wn.2d at 220. Accordingly, application of CR 11 requires "consideration of both CR 11's purpose of deterring baseless claims as well as the potential chilling effect CR 11 may have on those seeking to advance meritorious claims." *Bryant*, 119 Wn.2d at 219.

■■ A trial court may not impose CR 11 sanctions for a baseless filing "unless it also finds that the attorney who signed and filed the [pleading, motion or legal memorandum] failed to conduct a *reasonable inquiry* into the factual and legal basis of the claims." *Bryant*, 119 Wn.2d at 220. The court must use an objective standard, asking "whether a reasonable attorney in like circumstances could believe his or her actions to be factually and legally justified." *Bryant*, 119 Wn.2d at 220; *Doe v. Spokane and Inland Empire Blood Bank*, 55 Wn. App. 106, 111, 780 P.2d 853 (1989). To avoid being swayed by the benefit of hindsight, the trial court should impose sanctions only when it is " 'patently clear that a claim has absolutely no chance of success.' " *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir.. 1986) (quoting *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985)), *cert. denied*, 480 U.S. 918 (1987); *Bryant*, 199 Wn.2d at 220. We review a sanction order under the abuse of discretion standard, asking whether it was manifestly unreasonable or based on untenable grounds. *Biggs v. Vail*, 124 Wn.2d 193, 197, 876 P.2d 448 (1994); *Watson v. Maier*, 64 Wn. App. 889, 896, 827 P.2d 311, *review denied*, 120 Wn.2d 1015 (1992).

## LEGAL AND FACTUAL BASES FOR CAIN'S CLAIMS

The trial court found that any factual or legal bases for pursuing MacDonald's claims evaporated after her deposition. Accordingly, we must determine whether a reasonable attorney, in like circumstance, could reasonably

believe he was legally and factually justified in pursuing this litigation after MacDonald made her damaging admissions in her deposition. *See Bryant*, 119 Wn.2d at 220; *Doe*, 55 Wn. App. at 111.

## SEXUAL DISCRIMINATION CLAIMS

At summary judgment, Cain argued that Korum Ford provided a hostile work environment and engaged in quid pro quo sexual harassment, both of which would violate RCW 49.60.180(2) and (3). A prima facie case of sexual discrimination based on a hostile work environment requires proof of the challenged conduct, damages, and the following four elements. *Schonauer v. DCR Entertainment, Inc.*, 79 Wn. App. 808, 820, 905 P.2d 392 (1995).

(1) The conduct was unwelcome, offensive, and unsolicited by the plaintiff. *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 406, 693 P.2d 708 (1985).

(2) The conduct would not have occurred had the employee been of the opposite sex. *Glasgow*, 103 Wn.2d at 406.

(3) The conduct was "sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment." *Glasgow*, 103 Wn.2d at 406. The court determines this by looking to the totality of the circumstances, considering factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 114 S. Ct. 367, 371, 126 L. Ed. 2d 295 (1993); *Glasgow*, 103 Wn.2d at 406-07. "[I]f the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment." *Harris*, 114 S. Ct. at 371.

(4) The conduct is imputable to the employer. Where the actor was a manager of the defendant, this element is satisfied. *Glasgow*, 103 Wn.2d at 407.

At her deposition, MacDonald provided testimony establishing that Huber's and Yaeger's actions were unwelcome, element (1), and resulted because of her sex, element (2). Because of Yaeger's and Huber's positions as Korum Ford managers, their actions can be imputed to their employer, element (4).

■ However, MacDonald fails to provide evidence of element (3), that the alleged harassment was sufficiently pervasive to affect the terms or conditions of her employment. She testified that she was "very surprised" by Huber's New Year's Eve kiss because it was "out of character" for him and she acknowledged that, beyond this single incident, she could not recall Huber ever treating her in an inappropriate manner. Although offensive and inappropriate, this isolated indiscretion cannot support a hostile environment claim. "Casual, isolated or trivial manifestations of a discriminatory environment do not affect the terms or conditions of employment to a sufficiently significant degree to violate the law." *Glasgow*, 103 Wn.2d at 406.

In response to questions about Yaeger's alleged sexual advances, MacDonald identified two recurring behaviors: Yaeger's habit of coming up behind her and placing his hand on her back and his habit of positioning himself in the office hallway so she would brush against him when she passed. MacDonald said that she found Yaeger's behavior, respectively, "offensive" and "irritating," but did not perceive these actions to be sexual harassment at the time they occurred and never complained about this behavior to Yaeger or any other member of the Korum Ford management team.

MacDonald could recall only two instances when Yaeger used inappropriate language in her presence. She claims that he told her, "with [her] tits [she] should be able to . . . sell anything or everyone." MacDonald found this statement "very inappropriate" and offensive. In the other incident, Yaeger allegedly thanked MacDonald while simultaneously stroking his fly or belt. Although

MacDonald found this gesture "very irritating," she was unsure whether Yaeger meant it to have sexual overtones. Her response to both incidents was to turn and walk away.

Although inappropriate, Yaeger's behavior was mild in comparison to acts that courts have found create a hostile environment. *See Glasgow*, 103 Wn.2d at 402 (co-worker used abusive language around females and "touched and fondled" female employees); *Harris*, 114 S. Ct. 367 (women employees subjected to sexual innuendo, asked to retrieve coins from president's front pocket, and asked to retrieve objects purposefully tossed on the floor); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986) (bank manager demands sex from, fondles, exposes himself to, and rapes female employee); *Ellison v. Brady*, 924 F.2d 872 (9th Cir. 1991) (prima facie case of hostile work environment established by "bizarre" love letters from co-worker which frighten and upset employee); *Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir. 1990) (use of derogatory and insulting terms to describe and address women employees and posting of pornography in common areas and personal work spaces of women employees establish prima facie case of hostile work environment); *E.E.O.C. v. Hacienda Hotel*, 881 F.2d 1504 (9th Cir. 1989) (male chief engineer makes frequent sexual comments and advances on maids; female supervisor calls female employees "dogs" and "whores"). *See also Chamberlin v. 101 Realty, Inc.*, 915 F.2d 777 (1st Cir. 1990) (five instances of inappropriate comments about employee's appearance and/or sexual advances not sufficiently severe or pervasive to sustain hostile work environment allegation). MacDonald did not testify that Yaeger's actions were physically threatening or humiliating or that they unreasonably interfered with her work performance.

MacDonald testified that none of the other Korum Ford employees ever used offensive language or acted toward her in an improper manner. She also acknowledged that she never expressed interest in or applied for a promotion during her employment with Korum Ford.

Given this record, the trial court did not abuse its discretion in concluding that after MacDonald's deposition, Cain lacked a factual basis for pursuing a hostile environment claim.

## QUID PRO QUO CLAIM

Cain also argued quid pro quo harassment, contending that Huber fired MacDonald because she rebuffed his sexual advance on New Year's Eve. To prove quid pro quo harassment, an employee must show that an employer or agent of the employer sought "sexual consideration" in exchange for the employee's compensation, terms or conditions of employment. *Glasgow*, 103 Wn.2d at 405; *Thompson v. Berta Enters. Inc.*, 72 Wn. App. 531, 536, 864 P.2d 983, *review denied*, 124 Wn.2d 1028 (1994). The conduct must be unwelcome and based on gender. *Schonauer*, 79 Wn. App. at 823. Unlike hostile work environment claims, quid pro quo discrimination need not be pervasive, and may be predicated on one isolated incident. *Schonauer*, 79 Wn. App. at 823.

■ Here, although Huber's kiss was unwelcome and based on gender, MacDonald failed to show that Huber sought sexual consideration from MacDonald in exchange for allowing her to keep her job. The kiss occurred when she was leaving work on New Year's Eve. As she prepared to cross the street, Huber walked up and grabbed her, and then kissed her. Surprised, she backed away, crossed the street, met her husband, and went home. She does not recall Huber saying anything to her during this incident. Huber terminated her on her next work day, January 4, 1988.

Although the alleged harassment occurred in close proximity to the firing, MacDonald acknowledged her poor sales figures and that Korum Ford had fired a male salesperson with sales figures similar to her own. Further, there is no evidence that Huber explicitly or implicitly communicated or possessed an intention to take adverse

action against her if she rebuffed his advance. Thus, the trial court did not abuse its discretion in concluding that, after MacDonald's deposition, Cain lacked a factual basis for pursuing a quid pro quo harassment claim

## WRONGFUL DISCHARGE

On appeal, Cain argues that Korum Ford wrongfully discharged MacDonald in contravention of public policy prohibiting sexual discrimination in the work place. *See Kinney v. Bauch*, 23 Wn. App. 88, 94-95, 596 P.2d 1074, *review denied*, 92 Wn.2d 1032 (1979). *See generally Bravo v. Dolsen Cos.*, 125 Wn.2d 745, 757, 888 P.2d 147 (1995) ("an employee states a cause of action in tort for wrongful discharge if the discharge contravenes a clear mandate of public policy"). We find that this argument also lacks support.

To establish a prima facie case of wrongful discharge due to discrimination in violation of RCW 49.60.180, an employee must prove she was: (1) within the protected group; (2) discharged; (3) doing satisfactory work; and (4) replaced by someone outside the protected group.[5] *Kastanis v. Educational Employees Credit Union*, 122 Wn.2d 483, 490, 859 P.2d 26, 865 P.2d 507 (1993). *See Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 362, 753 P.2d 517 (1988).

MacDonald's evidence fails on factor (3), that she was doing satisfactory work. She conceded that she had low sales figures for three of the eight months she worked at Korum Ford. Cain had possession of Korum Ford sales records confirming this, even before MacDonald's deposition. Nor did MacDonald provide proof that Huber's and Yaeger's actions caused her poor sales record. The Commission's case file, part of the trial court record, also suggests

---

[5]The federal courts have recognized that a prima facie case of wrongful discharge due to discrimination also can be established by offering direct evidence of discriminatory intent. *Kastanis v. Educational Employees Credit Union*, 122 Wn.2d 483, 491, 859 P.2d 26, 865 P.2d 507 (1993). As Cain did not argue this theory below, we will not address it here.

a lack of evidence of factor (4). The record indicates that Korum Ford replaced MacDonald with another woman, a person *inside* the protected group. Based on this record, the trial court did not abuse its discretion in determining that Cain lacked a factual basis to continue his pursuit of this claim.

## REASONABLE PRE-FILING INVESTIGATION

■■ Cain claims that after MacDonald's deposition he continued to investigate the factual basis of the cause of action. "[T]he appropriate level of pre-filing investigation is . . . tested by 'inquiring what was reasonable to believe at the time the pleading, motion or legal memorandum was submitted.' " *Biggs*, 124 Wn.2d at 197 (quoting *Bryant*, 119 Wn.2d at 220). "An attorney's 'blind reliance' on a client . . . will seldom constitute a reasonable inquiry." *Miller v. Badgley*, 51 Wn. App. 285, 302, 753 P.2d 530, *review denied*, 111 Wn.2d 1007 (1988) (quoting *Southern Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986)).

Neither Cain's claim that he *attempted* to work with two private investigators, nor his knowledge of another lawsuit by two former Korum Ford employees showed reasonable inquiry. In the other lawsuit, former Korum Ford employees alleged sexually discriminatory employment practices and retaliatory termination. MacDonald, however, testified that she never complained about the alleged discriminatory actions. Further, Korum Ford did not hire one of the managers involved in the other lawsuit until three years after MacDonald's termination. This other lawsuit does not provide the missing evidence in MacDonald's case.

Cain's other examples of his attempts to verify MacDonald's claims are equally unpersuasive. Finally, his reliance on his client as his only witness to the discriminatory acts was not warranted after the deposition. The trial

court did not abuse its discretion in finding that Cain failed to conduct a reasonable factual inquiry.

## ATTORNEY FEES AWARD

Cain argues that the trial court should have considered the extent to which Korum Ford could have mitigated or avoided its expenses and fees. *See Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 879 (5th Cir. 1988). We agree.

CR 11 is not meant to act as a fee shifting mechanism, but rather as a deterrent to frivolous pleadings. *Bryant*, 119 Wn.2d at 220. When attorney fees are granted under CR 11, the trial court "must limit those fees to the amounts reasonably expended in responding to the sanctionable filings." *Biggs*, 124 Wn.2d at 201.

> In fashioning an appropriate sanction, the trial judge must of necessity determine priorities in light of the deterrent, punitive, compensatory, and educational aspects of sanctions as required by the particular circumstances. "The basic principal governing the choice of sanctions is that the least severe sanctions adequate to serve the purpose should be imposed."

*Miller*, 51 Wn. App. at 303-04 (citation omitted) (quoting Schwartzer, *Sanctions Under the New Federal Rule 11 — A Closer Look*, 104 F.R.D. 181, 201 (1985)).

In considering whether a fee is "reasonable," the trial court must also consider whether those fees and expenses could have been avoided or were self-imposed. *Thomas*, 836 F.2d at 879. "A party resisting a motion that violates CR 11 has a duty to mitigate and may not recover excessive expenditures." *Miller*, 51 Wn. App. at 303. Accordingly, the moving party must notify the offending party as soon as it becomes aware of sanctionable activities, thereby providing the offending party with an opportunity to mitigate the sanction by withdrawing or amending the offending paper. *Biggs*, 124 Wn.2d at 198. "Prompt notice of the possibility of sanctions fulfills the primary purpose of the rule, which is to deter litigation

abuses." *Biggs*, 124 Wn.2d at 198. *See Bryant*, 119 Wn.2d at 224.

■ The *Biggs* court voiced concern that sanctions be reserved for "egregious conduct and not be viewed as simply another weapon in a litigator's arsenal." *Biggs*, 124 Wn.2d at 198 n.2. Accordingly, it ruled that an attorney should informally notify the offending party by telephone call or letter before filing, preparing and serving a CR 11 motion. *Biggs*, 124 Wn.2d at 198 n.2. Although this informal notice does not replace a formal CR 11 motion, a trial court should consider evidence of its presence or absence when devising an appropriate sanction. *Biggs*, 124 Wn.2d at 198 n.2.

■ The trial court must also specify in the record the specific filings that violate CR 11. Attorney fee sanctions should not exceed the amount expended by the nonoffending party in responding to the sanctionable conduct. *Biggs*, 124 Wn.2d at 202.

> If the sanctions imposed are substantial in amount, type, or effect, appellate review of such awards will be inherently more rigorous; such sanctions must be quantifiable with some precision. Therefore, justification for the Rule 11 decision in the record must correspond to the amount, type, and effect of the sanction applied.

*Thomas*, 836 F.2d at 883.

Here, the trial court imposed a sanction equal to the entire amount expended by Korum Ford from the date of MacDonald's deposition. CR 11, however, applies specifically to the filing of pleadings, motions and legal memoranda. It does not impose an affirmative duty to dismiss an action once it has become unreasonable to pursue its prosecution. *Doe*, 55 Wn. App at 114.

The award here does not comport with these principles in two respects. First, it was not limited to those amounts attorney two reasonably expended in responding to specific sanctionable filings. Instead, it included attorney two's billable hours for acquainting herself with and

organizing the file, initiating discovery, and preparing for trial. An award for those amounts appears to be a fee shifting mechanism rather than "the least severe sanction[ ] adequate to serve the purpose." *Miller*, 51 Wn. App. at 304.

Second, it appears that attorney two could have avoided or mitigated the fees reasonably generated in responding to specific sanctionable filings. For example, Korum Ford's first attorney notified Cain that he intended to seek CR 11 sanctions if Cain proceeded with a pending motion to amend the complaint and join an additional party. In response, Cain withdrew the motions. Had attorney two similarly notified Cain that she considered his continued pursuit of the case sanctionable, she might have deterred some of the litigation abuse.

Thus, it is necessary for us to remand this matter to the trial court for a recalculation of CR 11 sanctions. On remand, the trial court should identify the specific filings that violate CR 11. The award of attorney fees and expenses should not exceed Korum Ford's costs reasonably attributable to specific sanctionable filings. Further, the award should not include fees and expenses that were self-imposed or that Korum Ford reasonably could have avoided by notifying Cain of its concerns.

## ATTORNEY FEES REQUESTS

Cain's request for attorney fees on appeal is meritless. However, his appeal does not lack merit. Thus, we deny Korum Ford's request for attorney fees pursuant to RAP 18.1 and 18.9.

We affirm the award of CR 11 sanctions, but remand for a recalculation of the appropriate amount of fees consistent with this opinion and for entry of findings of fact and conclusions of law supporting the sanction award.

BRIDGEWATER, J., and FLEISHER, J. Pro Tem., concur.