# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In Re The Marriage of:<br><br>JULIA ZUCATI,<br><br>                    Appellant,<br><br>          v.<br><br>AARON ZUCATI,<br><br>                    Respondent. | No.  47323-2-II<br><br><br><br><br><br>UNPUBLISHED OPINION |

SUTTON, J. — Attorney Marlene Wenger appeals the CR 11 sanctions imposed on her by the trial court.[1]  She argues that the trial court erred because (1) it did not consider all of the arguments and pleadings; (2) it failed to specify what actions violated CR 11, address whether Wenger conducted a reasonable inquiry under CR 11, or make a record of its findings in support of the CR 11 sanctions; (3) it failed to provide her with adequate notice and opportunity to be heard; and (4) the sanctions included unrelated costs.  She also argues that opposing counsel Jennifer Johnson improperly added language that was not part of the trial court's oral ruling to the final written order entered by the trial court.  We affirm the trial court's CR 11 sanctions order,

---

[1] Although Julia Zucati and Marlene Wenger filed a joint notice of appeal, the appeal does not concern the trial court's denial of Julia Zucati's petition to modify the child support order.  As for the challenge to the CR 11 ruling against Wenger, only Wenger, not Julia, is an aggrieved party who is entitled to challenge that ruling.  RAP 3.1.

deny the requests for attorney fees and costs on appeal, and deny the request for CR 11 sanctions against Johnson.

## FACTS[2]

### I. FINAL CHILD SUPPORT ORDER

Julia and Aaron Zucati have five children. In December 2013, after the couple's marriage had been dissolved, the trial court issued a final parenting plan that designated Aaron as the primary residential parent. In January 2014, Aaron filed a financial declaration and a child support schedule worksheet. Neither document mentioned the monthly social security benefits that two of the children received.

In March 2014, the trial court entered a final order of child support that required Julia to pay $109.40 in support for each child. The March 2014 order notes that no deviation from the standard calculation was requested and that Aaron was "entitled to receive any and all social security benefits" received by two of the children. Clerk's Papers (CP) at 81. The final child support schedule worksheet attached to the order stated that Aaron's monthly gross income was $2,948.80 and that Julia's monthly gross income was $1,960.62; it did not refer to any social

---

[2] In the sections of the appellant's brief entitled "Identity of the Parties," and "Statement of the Case," Wenger, without citation to the record, refers to several facts that are not in the record. Br. of Appellant at 2-3. We do not consider any factual statements unless they are supported by the record before us. *See* RAP 10.3(a)(5) ("Reference to the record must be included for each factual statement."); *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

security benefits. Both Julia and Aaron signed this worksheet, declaring under penalty of perjury that the information in the worksheet was true and correct.[3]

## II. PETITION TO MODIFY CHILD SUPPORT ORDER

In November 2014, Julia, represented by Wenger, filed an amended petition[4] to modify the child support order because of Aaron's alleged omission in not listing the children's social security benefits in the child support worksheet. Wenger argued that a modification was warranted because (1) there had been a substantial change of circumstances, (2) the child support order did not include the children's social security benefits,[5] (3) Aaron "perjured himself when he signed the "Child Support Worksheet[]" without including those benefits, and (4) the order created a "severe economic hardship" on Julia because it did not properly account for the social security benefits. CP at 88. Wenger repeated these same arguments in her supporting memorandum[6] and further argued that (5) Julia was incapable of recognizing this mistake and she was pressured and misled by Aaron and his counsel, and (6) Julia was delinquent in her child support payments "[d]ue to her lack of employment, medial issues and a job loss because of the nature of the seasonal work."[7] CP

---

[3] A trial court is required to review the child support worksheet prior to entry of a final child support order. RCW 26.19.071(1).

[4] The original petition is not part of the record on appeal.

[5] RCW 26.19.071(1) requires that the parties disclose all income and resources of their households.

[6] Wenger filed this supporting memorandum on January 9, 2015. She had previously filed a memorandum "in support of motion for revision," on November 25, 2014, in which she addressed issues related to the children's custody. CP at 91.

[7] Wenger provided the trial court with a letter dated September 9, 2014, from a doctor regarding Julia's inability to work from August 26, 2014 "until further notification." CP at 114.

at 102. Wenger asked the trial court to retroactively adjust the child support or provide an "equitable offset" in light of the social security benefits, noting that the worksheet signed by the parties and used by the court did not reflect that Aaron had a substantial increase in income from $2,900 to $4,100 per month, nor did the worksheet accurately reflect Julia's income. CP at 103.

### III. HEARING AND ORAL RULING ON PETITION TO MODIFY AND CR 11 SANCTION

When asked to clarify the purpose of the petition to modify, Wenger replied that there was "a statutory violation of the original child support worksheet[]," which was signed under penalty of perjury, because the children's social security benefits had been omitted. Verbatim Report of Proceedings (RP) at 2. The trial court directed Wenger to the paragraph in the child support order stating that the social security payments were to go directly to Aaron. Wenger acknowledged this paragraph, but she argued that the social security income still should have been disclosed in the financial worksheet as "extraordinary" income and that without this information the trial court could not make an "informed decision as to what child support should be." RP at 4-5. Wenger also claimed that the worksheet did not reflect the correct incomes because Aaron now earned a monthly income of $4,100[8] rather than $2,900 and Julia's reported income of $1,960.62 was not correct. When the trial court asked why Julia had signed the worksheet if her reported income was not correct, Wenger responded that Julia was uneducated; that she had signed the papers when she was not represented; and that a video of the hearing showed that she sat "and merely sign[ed] papers," without anyone advising her of what they meant. RP at 7.

---

[8] There is nothing in the record documenting that Aaron was earning a monthly income of $4,100.

At this point, Aaron's counsel, Johnson, objected, stating that all of this information was "outside of the record" and that there was "no evidence that has been presented to substantiate any of the facts that [Wenger was] now purporting to be true to the court." RP at 7. The trial court sustained this objection, stating, "What we're looking at is you're claiming that there's a statutory violation of funds that should have been included for the court to consider a deviation." RP at 8. The trial court then asked Wenger if it needed to consider anything else; she responded that Julia was asking that the child support be set at an appropriate amount.

In denying Julia's petition to modify, the trial court orally stated that the court had considered the social security benefits, that the final child support order referred to the benefits, that neither party requested a deviation in child support, and that the omission of the social security benefits in the worksheet was not "fatal to the order of child support." RP at 8. The court then stated:

> In fact, when I look at this case, I am going to award CR 11 fees. There's not a legal basis. It's not well-grounded in fact. I do not find that there's—that it's warranted by existing law or a good faith argument.
>
> And I am going to award fees against Ms. Wenger for bringing it, because she's the attorney, and she's required, when bringing an action on behalf of her client, that she has to verify the information as an officer of the court that her requests are well-grounded in law, and if anybody were to read this file, they can clearly see that the Social Security benefits were a primary consideration in all of the orders of child support.

RP at 9.

5

IV. PRESENTATION OF ORDERS AND SANCTIONS

At the final presentation hearing, Wenger objected to Johnson's proposed findings and proposed order because (1) they were not identical to the trial court's oral ruling, (2) the trial court had not addressed the merits of her (Wenger's) arguments in its oral ruling,[9] (3) the record from the hearing did not show that the trial court made a finding that Wenger failed to make a reasonable inquiry as required for CR 11 sanctions to be imposed, and (4) Johnson's proposed cost bill included charges that were not proper. The trial court declined to address the above issues in light of its oral decision and informed Wenger that she could file a motion to modify the court's findings.

As to Johnson's fee request, Wenger objected to (1) charges for Johnson's appearance at the initial petition hearing and argued that Johnson should have known Julia had never confirmed on the docket, (2) charges for working with another counsel who was involved in a different part of this case, and (3) "double billing" because Johnson had billed for two notices of appearance— a general notice of appearance, and a limited notice of appearance. RP at 26. Johnson explained that she appeared at the initial petition hearing, unaware that the hearing had not been confirmed by Wenger, and that the matter was stricken. Wenger responded that Johnson should have received a draft court docket showing that the hearing had not been scheduled. As to the charges for preparing two notices of appearance, Johnson explained that it became clear that Julia also contested the parenting plan, and because Johnson could not represent Aaron in that matter, she

---

[9] Wenger asserted that the trial court in its oral ruling had not addressed her arguments as to (1) whether Aaron's failure to disclose the social security benefits in the worksheet was a "statutory violation," (2) Julia's "economic hardship" claim (which included her claim that she had been unable to work), or (3) whether Aaron had perjured himself when he signed the worksheet without including the social security income. RP at 14, 20.

withdrew the general notice of appearance she had filed and substituted a limited notice of appearance for the modification matter. After reviewing Johnson's cost bill, the trial court found it reasonable.

The trial court entered written findings of fact and conclusions of law and an order denying the petition to modify the child support. The trial court made the following findings: (1) it had considered the children's social security benefits when it entered the final order of child support, (2) Julia was aware of the children's social security benefits and did not ask for a deviation in child support, (3) there was no evidence Aaron or his attorney engaged in deceptive practices by omitting the social security benefits on the worksheet, (4) the omission of the social security benefits in the worksheet was "not fatal" because the final order referred to these benefits, and (5) the children's social security benefits paid "for items in excess of normal expenses." CP at 117.

As to CR 11 sanctions, the trial court found that Wenger signed the petition to modify and the supporting legal memorandum in violation of CR 11 because (1) she did not make a "reasonable inquiry" as required by CR 11, (2) the pleadings, motions, and legal memorandum were "not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law or the establishment of new law," and (3) the pleadings "were interposed for an improper purpose, so as to harass, cause unnecessary delay and needlessly increase in the cost of litigation." CP at 118. The trial court also incorporated its oral CR 11 findings into the final written order denying the petition to modify and granting CR 11 sanctions.

Wenger appeals the CR 11 sanctions order.

ANALYSIS

I. LEGAL STANDARDS

We review a trial court's order granting CR 11 sanctions and the amount of sanctions for abuse of discretion, "asking whether it was manifestly unreasonable or based on untenable grounds." *MacDonald v. Korum Ford*, 80 Wn. App. 877, 884, 912 P.2d 1052 (1996) (citing *Biggs v. Vail*, 124 Wn.2d 193, 197, 876 P.2d 448 (1994); *Watson v. Maier*, 64 Wn. App. 889, 896, 827 P.2d 311 (1992)). The trial court must impose CR 11 sanctions if it finds that (1) a pleading lacks a factual or legal basis and was not a good faith argument for a change in the law, and (2) the attorney who signed and filed the pleading failed to conduct a reasonable inquiry into the factual and legal basis of the claim.[10] *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 217-20, 829 P.2d 1099 (1992); *Doe v. Spokane and Inland Empire Blood Bank*, 55 Wn. App. 106, 110, 780 P.2d 853 (1989) (sanctions are mandatory if the court determines a CR 11 violation has occurred). The fact the pleading is not successful on its merits is not, however, dispositive; the trial court should impose sanctions only when it is "'patently clear that a claim has absolutely no chance of success.'" *MacDonald*, 80 Wn. App. at 884 (internal quotation marks omitted) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986)).

---

[10] The trial court also found that Wenger's pleadings "were interposed for an improper purpose, so as to harass, cause unnecessary delay, and needlessly increase in the cost of litigation." CP at 118. Because we hold that the record supports the trial court's CR 11 sanctions based on Wenger's filing pleadings that lacked a factual and legal basis and were not based on a good faith argument for a change in the law, we do not address whether these pleadings were also imposed for an improper purpose.

II.  THE TRIAL COURT CONSIDERED ALL ARGUMENTS BEFORE IMPOSING SANCTIONS

Wenger first argues that the trial court imposed CR 11 sanctions without considering all of the arguments and evidence including her argument that Aaron violated RCW 26.19.071[11] by not including the social security benefits and her argument that Julia suffered economic hardship and could not work.  We disagree.

A.  ALLEGED STATUTORY VIOLATION

Wenger asserts that RCW 26.19.071 requires that all income in the child support worksheet be included and, because Aaron failed to do so, her argument had a factual and legal basis.  The record, however, shows that the trial court considered this argument and that it concluded that omitting the social security benefits from the worksheet was not grounds to modify because the trial court was clearly aware of and considered these benefits before determining the parties' child support obligations and entering the final child support order.

Wenger next argues that the mere fact there was arguably a violation of RCW 26.19.071 is sufficient to establish that her pleadings had a factual and legal basis.  The petition to modify was based in part on a technical omission in the child support worksheet that did not have an impact on the trial court's decision and that the omission did not establish a factual and legal basis under CR 11 for the petition to modify.

---

[11] Wenger cites to RCW 26.09.071, but it is clear that she intended to cite to RCW 26.19.071.

B.  ALLEGED ECONOMIC HARDSHIP

Wenger next argues that the trial court failed to consider Julia's economic hardship and evidence showing Julia's inability to work.  We disagree.  The petition to modify is based entirely on Wenger's arguments that the alleged omission in Aaron's worksheet prevented the trial court from considering the children's social security benefits before determining the parties' child support obligations.

First, the amended petition refers to economic hardship only as it related to the omitted social security benefits and whether that omission created a "hardship" by preventing the trial court from considering these benefits.  CP at 88.  Second, the supporting memorandum focused on the omission.  Third, the memorandum's reference to Julia's inability to work, medical issues, and the purported overstated income related to the omission of social security benefits.[12]  Fourth, during the petition hearing, the trial court sustained Johnson's objection to Wenger's argument about purported overstated income because this argument included references to facts outside of the record, and Wenger does not challenge that ruling.  Fifth, when asked whether there were other reasons to modify, Wenger responded only that Julia was also asking that the child support be set

---

[12] Julia's argument as a whole focused on the trial court's consideration of the children's social security benefits.  Although she mentioned financial hardship and inability to work, she never expressly claimed that she was entitled to a child support modification based solely on those factors.

at an "appropriate amount[]."[13] RP at 8. The trial court properly considered all of the arguments to the extent necessary before finding a CR 11 violation and imposing CR 11 sanctions.

### III. FINDINGS SUPPORTING CR 11 SANCTIONS

Wenger next argues that the trial court (1) did not identify what actions violated CR 11,[14] (2) did not address whether Wenger made a "reasonable inquiry" under CR 11, and (3) did not make a record of its findings in support of the CR 11 sanctions. Again, we disagree.

First, the trial court found that Wenger signed and filed a petition to modify that lacked a factual and legal basis and was not based on a good faith argument for a change in the law. RP at 9 ("There's not a legal basis. It's not well-grounded in fact. I do not find that there's—that it's warranted by existing law or a good faith argument.") Thus, Wenger's assertion that the record did not disclose what actions by Wenger violated CR 11 has no merit.[15]

---

[13] This discussion was as follows:

> THE COURT: What we're looking at is you're claiming that there's a statutory violation of funds that should have been included for the court to consider a deviation.
>
> MS. WENGER: Yes.
>
> THE COURT: Anything else?
>
> MS. WENGER: And we would ask that the child support be set at appropriate amounts.

RP at 8.

[14] Wenger argues that "[t]he record is absent any reference to action on the part of [Wenger] that violated CR 11." Br. of Appellant at 5.

[15] Wenger's argument that the trial court did not make explicit findings as to which argument violated CR 11, has no merit. As we conclude above, the petition to modify presented only one issue—whether the alleged omissions in Aaron's worksheet prevented the trial court from

Second, the trial court addressed the reasonableness of Wenger's inquiry. CR 11 requires that the attorney's inquiry be objectively reasonable. *Bryant*, 119 Wn.2d at 220. The court should examine "whether a reasonable attorney in like circumstances could believe his or her actions to be factually and legally justified" at the time the attorney submitted the pleading, motion, or legal memorandum. *Bryant*, 119 Wn.2d at 220. As noted above, after denying the petition, the trial court stated:

> In fact, when I look at this case, I am going to award CR 11 fees. There's not a legal basis. It's not well-grounded in fact. I do not find that there's—that it's warranted by existing law or a good faith argument.
>
> And I am going to award fees against Ms. Wegner for bringing it, because she's the attorney, and she's required, when bringing an action on behalf of her client, that *she has to verify the information as an officer of the court that her requests are well-grounded in law, and if anybody were to read this file, they can clearly see that the Social Security benefits were a primary consideration in all of the orders of child support*.

RP at 9 (emphasis added). This statement established that the trial court found that a simple review of the court file would have revealed that the petition to modify had no legal basis. Contrary to Wenger's argument, this statement shows that the trial court addressed the reasonableness of Wenger's inquiry. The trial court did not abuse its discretion by concluding that a reasonable attorney who had examined the record would have realized that the trial court had considered the social security benefits and understood that the petition to modify had absolutely no chance of success.

---

considering the children's social security benefits before determining the parties' child support obligations.

Third, the trial court's statements in the record, which are incorporated by reference into its CR 11 order, adequately support its order granting CR 11 sanctions against Wenger. Accordingly, Wenger's arguments have no merit.

IV.  LACK OF NOTICE AND OPPORTUNITY TO BE HEARD

Wenger next argues that the CR 11 sanctions are improper because they were imposed without notice and an opportunity to be heard.  We disagree.

CR 11 procedures must comply with due process requirements.  *Bryant*, 119 Wn.2d at 224. "Both practitioners and judges who perceive a possible violation of CR 11 must bring it to the offending party's attention as soon as possible." *Biggs v. Vail*, 124 Wn.2d 193, 198, 876 P.2d 448 (1994).  But "[w]hile it is fundamental that due process requires notice and opportunity to be heard, this does not necessarily mean that an attorney is entitled to a full evidentiary hearing on CR 11 sanctions." *Watson v. Maier*, 64 Wn. App. 889, 900, 827 P.2d 311 (1992) (internal citations omitted).  Although the court can look to factors such as the general circumstances, the type and severity of the sanction being considered, and the judge's knowledge of the facts and whether there is a need for further inquiry, "'in most situations, the judge's participation provides him with full knowledge of the relevant facts and little further inquiry will be necessary.'" *Watson*, 64 Wn. App. at 900 (quoting Fed. R. Civ. P. 11 advisory committee note, 97 F.R.D. 165, 201 (1983)).  In many situations, the sanctioned individual need only have a reasonable opportunity to contest and explain.  *Watson*, 64 Wn. App. at 900 fn. 3.

Here, the trial court imposed the CR 11 sanctions after its first opportunity to fully review the petition to modify.  And, although it did not provide Wenger with advance notice of its action, the court gave both parties an opportunity to address the sanction issue and, at the final hearing,

the court discussed the language to be used in its final order. Given the court's familiarity with the facts of this case, this was sufficient to provide notice and an opportunity to be heard.

## V. AMOUNT OF SANCTIONS

Wenger next argues that the sanctions included costs that were not related to the petition to modify. She challenges the trial court's inclusion of costs related to (1) Johnson's notice of withdrawal and two notices of appearances, (2) Johnson's appearance at a hearing that was not held because it was "inadvertently not confirmed," and (3) Johnson's communications with another attorney working on an unrelated issue in this case. Br. of Appellant at 22.

As to Johnson's notice of withdrawal and two notices of appearances, Johnson explained that she was retained to address a petition to modify child support and that she was required to withdraw her original notice of appearance and replace it with a limited notice of appearance after it became apparent that Wenger was raising issues related to the parenting plan. The amended petition referred only to the child support order, and it was not unreasonable for Johnson to limit the scope of her representation to the matter for which she had been retained once Wenger filed additional pleadings that expanded the scope of the petition to include the parenting plan.

As to the hearing that Johnson appeared for but which was not held, it was Wenger's responsibility to schedule the hearing and her failure to confirm this hearing was not within Johnson's control. Finally, as to Johnson's communications with Aaron's other counsel, Johnson stated that she was obligated to keep Aaron's other counsel informed and Wenger does not show that Johnson's communications with the other counsel were not necessary. Thus, we hold that the trial court did not abuse its discretion when it imposed these costs.

14

## VI. DRAFTING THE FINDINGS OF FACT AND CONCLUSIONS OF LAW

Wenger next argues that Johnson improperly "insert[ed] language that was not even addressed by the Court in the Motion Hearing" into the trial court's written CR 11 findings of fact and conclusions of law.[16] Br. of Appellant at 11. This argument has no merit.

Although Johnson drafted proposed findings of fact and conclusions of law, the trial court reviewed them and discussed each of them at length with both counsel before adopting them with some alterations in the final order. Wenger cites no authority that prohibits counsel from assisting the trial court by drafting proposed findings of fact and conclusions of law. And because a trial court's oral ruling is not final; it is "'"no more than an expression of its informal opinion at the time rendered. It has no final or binding effect unless formally incorporated into the findings, conclusion, and judgment.'" *State v. Collins*, 112 Wn.2d 306, 771 P.2d 350 (1989) (quoting *State v. Mallory*, 69 Wn.2d 532, 553-34, 419 P.2d 324 (1966)). To the extent these findings and conclusions may have differed from what the trial court said in its oral ruling, the trial court was well within its authority to make these changes. Accordingly, this argument fails.

---

[16] Imbedded in this argument, Wenger and Julia also appear to raise issues relating to Johnson's role in drafting previous orders signed by the court or issues related to prior orders that are not at issue in this appeal, apparently as evidence of deception that justifies CR 11 sanctions against Johnson. Most of what Wenger and Julia discuss is outside the record and has no relevance to the issues raised in the petition to modify or the CR 11 sanctions against Wenger; accordingly we do not address these issues.

Additionally, to the extent Julia is asking this court to impose CR 11 sanctions against Johnson, Julia never requested CR 11 sanctions against Johnson in the trial court, no evidentiary hearing took place on that issue before the trial court, and Julia fails to cite to any authority allowing us to impose CR 11 sanctions without a proper record for actions alleged to have occurred in the trial court. Accordingly, we decline the request to impose CR 11 sanctions against Johnson.

No. 47323-2-II

VII. Costs and Fees on Appeal

Finally, Wenger requests attorney fees and costs on appeal under RAP 18.1(c) and chapter 26.09 RCW. Because Wenger is not the prevailing party, we deny her request for attorney fees and costs.

We affirm the trial court's order granting CR 11 sanctions against Wenger, deny the requests for attorney fees and costs on appeal, and deny the request for CR 11 sanctions against Johnson.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

BJORGEN, A.C.J.

MELNICK, J.

16