COURT OF APPEALS DI
2016 MAY -2 AM 9: 4


IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JIMMY C. FLETCHER, Individually, | ) ) | No. 73456-3-I |
| Appellant. | ) ) ) | DIVISION ONE |
| v. | ) ) | |
| THE STATE OF WASHINGTON, DEPARTMENT OF CORRECTIONS; and JOHN and JANE DOES (1-10), | ) ) ) ) | UNPUBLISHED OPINION |
| Respondents, | ) | FILED: May 2, 2016 |

SCHINDLER, J. — Department of Corrections (DOC) Officer Jimmy C. Fletcher filed a lawsuit against DOC alleging a number of claims including discrimination, negligence, and retaliation. The court dismissed several claims on summary judgment. After a jury found in favor of DOC on the discrimination and retaliation claims, DOC filed a motion for CR 11 sanctions against Fletcher's attorney. The attorney appeals the order imposing CR 11 sanctions against him. We reverse.

## FACTS

Jimmy C. Fletcher, a Caucasian male, began working as a correctional officer for the Department of Corrections (DOC) on November 1, 2000. In 2005, Fletcher was promoted to sergeant. On August 23, 2007, Sergeant Fletcher was working as the shift sergeant at the minimum security unit (MSU) of the Monroe Correctional Complex

(MCC) in Monroe, Washington. While monitoring the security camera in the MSU shift office, Sergeant Fletcher observed two individuals dressed in civilian clothes enter the MSU through the vehicle gate. Sergeant Fletcher confronted the DOC employees, Program Manager Annie Williams and Yelena Brukhis, stating they were not authorized to use the vehicle gate without prior authorization.

Williams informed Sergeant Fletcher that she regularly entered the MSU through the vehicle gate. After continuing to disagree about use of the gate, Sergeant Fletcher returned to his office. Williams contacted the Superintendent to clarify that she could use the gate.

Thirty-five minutes later, Williams went to Sergeant Fletcher's office. Sergeant Fletcher was on the phone. Williams, in a "loud agitated manner," informed another officer present to "tell that Sgt [Fletcher] that I have permission from the superintendent [to use the gate]! . . . I don't want to talk to him about it anymore." Later that day, in front of 15 new staff members, Williams confronted Sergeant Fletcher again and reminded him that the Superintendent confirmed it was appropriate for Williams to use the gate.

On August 24, 2007, Williams approached Sergeant Fletcher and poked him between the shoulder blades, stating, "I want you in my office now." Sergeant Fletcher claimed Williams used an aggravated and loud tone. Because he felt uncomfortable meeting with Williams, Sergeant Fletcher called his supervisor, who told him not to meet with Williams alone. While Sergeant Fletcher was on the phone with his supervisor, Williams came into his office and told another officer, "[Y]ou tell [Sergeant Fletcher] to get in my office or else." Sergeant Fletcher reported the conflict with Williams to his

superior. In her deposition, Williams did not recall touching Sergeant Fletcher or using an "aggravated and loud" tone. But the DOC investigated Sergeant Fletcher's complaint and found that other witnesses substantiated Sergeant Fletcher's allegations. The Superintendent issued Williams a formal letter of reprimand for "failure to meet the expectations" for DOC employees.

Following the dispute, Sergeant Fletcher claims Williams and other DOC employees engaged in retaliatory and discriminatory conduct that prevented a promotion to lieutenant and caused him emotional distress.

In December 2007, Williams told another DOC employee that she was concerned about Sergeant Fletcher's role on two interview panels reviewing applicants for correctional officer positions. The panels denied applications from two women, both racial minorities. One of the dismissed applicants was Williams' niece. Sergeant Fletcher believed Williams had told other DOC employees he was racist. Sergeant Fletcher alleged another sergeant told him that Williams said Sergeant Fletcher should not be allowed to conduct interviews because he is racist. DOC employee Debra Holly, Sergeant Fletcher's partner, testified that the allegations had an "enormous" impact on Sergeant Fletcher.

Sergeant Fletcher claims DOC management also retaliated against him. In February 2008, the DOC administration attempted to transfer Sergeant Fletcher under Williams' supervision despite having knowledge of their history. Sergeant Fletcher objected, claiming the transfer would force him into a hostile work environment. Sergeant Fletcher sought assistance from his union representative, who wrote to a

member of the DOC's administration that he was "extremely disappointed in the actions of [DOC] management in protecting Sgt. Fletcher from a potentially violent supervisor."

In January 2010, Superintendent Scott Frakes sent Sergeant Fletcher an official letter of concern regarding the "inappropriate and unprofessional behavior" he exhibited when he was arrested for first degree negligent driving. Sergeant Fletcher disputed the letter and argued it should be removed from his file because he committed no misconduct. The letter was removed from his file after Sergeant Fletcher demonstrated the charges were reduced.

In February 2010, a supervisor cited Sergeant Fletcher for fraudulently signing an attendance roster for a training session he did not attend. Sergeant Fletcher insisted he attended the majority of the training and that the roster discrepancy was a clerical error. Regardless, Superintendent Frakes issued Sergeant Fletcher a letter of reprimand in April 2010 for unethical behavior.

Sergeant Fletcher was twice denied a promotion to lieutenant. On January 21, 2009, Sergeant Fletcher applied for an open lieutenant position. Williams was one of three individuals on the interview committee reviewing Sergeant Fletcher's application. Williams gave Sergeant Fletcher the lowest score of any member on the committee. Overall, Sergeant Fletcher scored 10th out of the 11 candidates who applied. Superintendent Frakes permitted Williams to participate on the interview panel despite his knowledge of the history between Williams and Sergeant Fletcher.

In June 2010, Sergeant Fletcher again informed the DOC of his interest in being promoted to lieutenant. Again, Williams was on the committee reviewing Sergeant

4

Fletcher's application. Superintendent Frakes selected another applicant to fill the open position.

Sergeant Fletcher also claims the DOC retaliated against him due to his protected union activity. In his capacity as union shop steward, Sergeant Fletcher made several complaints to his union, the DOC, the Washington State Legislature, and the media regarding safety concerns at the MCC. Many of these complaints followed the murder of Jayme Biendl, a fellow correctional officer who was killed by an inmate at the MCC in January 2011. For example, Sergeant Fletcher attended a press conference where he disagreed with Superintendent Frakes' statement that Officer Biendl did not fear for her safety, noting Officer Biendl had requested additional security cameras.

Sergeant Fletcher believed Superintendent Frakes retaliated against him for these statements through targeted disciplinary action and intimidation. A DOC employee said in a deposition that after the Officer Biendl murder, Sergeant Fletcher "tried to bring out the truth in what actually took place and . . . that's, I think, when most of us really seen management coming after him."

At one point, Superintendent Frakes removed Sergeant Fletcher from his position and reassigned him to a more restricted capacity. A lieutenant told Sergeant Fletcher that management thought it was "extremely dangerous" for a sergeant like Fletcher to have so much power. Sergeant Fletcher also received letters of concern regarding his performance in November and December 2011. Due to the allegedly hostile work environment, Sergeant Fletcher exhibited symptoms of post-traumatic stress disorder, panic attacks, and depression. Sergeant Fletcher was diagnosed with depression in 2011 and takes medication to address his symptoms.

5

On August 30, 2011, Sergeant Fletcher filed a lawsuit against DOC alleging a number of claims including wrongful discharge; constructive discharge; assault and battery; defamation; false light; invasion of privacy; tortious interference with contractual relations; tortious interference with business expectancy; discrimination; hostile work environment; retaliation; and negligent hiring, training, and supervision.

The parties completed discovery in October 2013. On January 2, 2014, the DOC attorney sent a letter to Sergeant Fletcher's attorney stating the claims "are frivolous, that most if not all should be voluntarily withdrawn," or DOC would file a motion for CR 11 sanctions if "required to research and write a summary judgment on unsupported claims." In response, Sergeant Fletcher voluntarily dismissed the claims for disparate impact discrimination, wrongful discharge, constructive discharge, tortious interference with contractual relations, and tortious interference with business expectancy. On March 19, 2014, Sergeant Fletcher filed an amended complaint.

DOC filed a motion for summary judgment. On July 25, 2014, the court denied the motion to dismiss as to the discrimination and retaliation claims but granted the motion to dismiss the other claims. At the conclusion of the trial on October 29, 2014, the jury found in favor of DOC on the discrimination and retaliation claims.

On November 24, 2014, the State filed a motion for CR 11 sanctions. Specifically, DOC sought an award of attorney fees and costs related to summary judgment dismissal of the 14 claims Sergeant Fletcher realleged in his amended complaint. The court imposed CR 11 sanctions for the 9 claims it concluded were frivolous: assault, battery, defamation, false light, discrimination, hostile work environment, intentional infliction of emotional distress, negligent infliction of emotional

distress, and negligence. The court entered a judgment of $20,181.68 against Sergeant Fletcher's counsel.

## ANALYSIS

Sergeant Fletcher's attorney Thaddeus Martin appeals, arguing the court erred in awarding attorney fees and costs under CR 11.[1]

### CR 11 Sanctions

The decision to impose sanctions under CR 11 is within the sound discretion of the trial court. State ex. Rel. Quick-Ruben v. Verharen, 136 Wn.2d 888, 903, 969 P.2d 64 (1998). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. MacDonald v. Korum Ford, 80 Wn. App. 877, 844, 912 P.2d 1052 (1996). Applying the wrong legal standard is an abuse of discretion. Mayer v. Sto Indus, Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006).

"The purpose behind CR 11 is to deter baseless filings and curb abuses of the judicial system." Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 219, 829 P.2d 1099 (1992). "CR 11 is not meant to act as a fee shifting mechanism, but rather as a deterrent to frivolous pleadings." Korum Ford, 80 Wn. App. at 891. CR 11 addresses two types of problems: (1) filings that are not grounded in fact and warranted by law

---

[1] As an initial matter, Martin asks us to strike the appendix to Assistant Attorney General Paul Triesch's declaration. We will not consider this appendix.

and (2) filings interposed for an improper purpose. Bryant, 119 Wn.2d at 217.[2] Because CR 11 sanctions may have a chilling effect, the court should impose CR 11 sanctions "only when it is patently clear that a claim has absolutely no chance of success." Skimming v. Boxer, 119 Wn. App. 748, 755, 82 P.3d 707 (2004).

"Both practitioners and judges who perceive a possible violation of CR 11 must bring it to the offending party's attention as soon as possible. Without such notice, CR 11 sanctions are unwarranted." Biggs v. Vail, 124 Wn.2d 193, 198, 876 P.2d 448 (1994). The notice requirement exists to give fair warning to pleading violators and to deter violations as early as possible. Biggs, 124 Wn.2d at 198. But proper notice of possible CR 11 sanctions must be meaningful. "[W]ithout prompt notice regarding a potential violation of the rule, the offending party is given no opportunity to mitigate the sanction by amending or withdrawing the offending paper." Biggs, 124 Wn.2d at 198. Otherwise, CR 11 would be "simply another weapon in the litigator's arsenal." Biggs, 124 Wn.2d at 199 n.2. Absent meaningful notice, an untimely CR 11 motion is impermissible. See, e.g., North Coast Elec. Co. v. Selig, 136 Wn. App. 636, 649-50, 151 P.3d 211 (2007) (CR 11 sanctions were improper when the prevailing party did not move for sanctions until over a year after original pleadings).

---

[2] CR 11(a) provides, in pertinent part:
Every pleading, motion, and legal memorandum of a party represented by an attorney shall be dated and signed . . . . The signature of . . . an attorney constitutes a certificate by the . . . attorney that the party or attorney has read the pleading, motion, or legal memorandum, and that to the best of the party's or attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
    (1) it is well grounded in fact;
    (2) it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law;
    (3) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and
    (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

We conclude DOC did not provide proper notice for purposes of CR 11. The DOC's "CR 11 notice letter" does not meet the requirements of CR 11. Although the letter is not in the record, according to the unchallenged findings of the court, the letter did not identify possible CR 11 violations. Unchallenged findings are verities on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992). Instead, the letter stated that "most if not all" of the claims "are frivolous" and should be withdrawn:

> 1/2/2014—[Assistant Attorney General] Triesch informs [defense attorney] Martin through a letter that the claims are frivolous, that most if not all should be voluntarily withdrawn, and that Mr. Triesch would file for sanctions if he had to research and write a summary judgement motion on unsupported claims.

The notice here does not identify CR 11 violations. A blanket assertion in the letter to Sergeant Fletcher's attorney before summary judgment that "most if not all" of the claims are frivolous does not provide adequate notice of possible CR 11 violations. The unchallenged record does not support the DOC's assertion. The court did not grant summary judgment on the discrimination and retaliation claims and the unchallenged findings establish that at least five other claims were not frivolous.

Even if the DOC is correct as to some of the claims, the record shows at least seven of the claims were not subject to CR 11. DOC cannot simply assert that "most if not all" of the plaintiff's claims are frivolous and then, after litigation has concluded, seek sanctions for claims that did not survive. CR 11 should not be used as a fee shifting mechanism, nor should the threat of sanctions "be viewed as simply another weapon in a litigator's arsenal." Biggs, 124 Wn.2d at 199 n.2. The trial court abused its discretion when it concluded the State provided meaningful notice of perceived CR 11 violations.

9

See Biggs, 124 Wn.2d at 198.  Absent meaningful notice, DOC's CR 11 motion is untimely and does not warrant sanctions.  Selig, 136 Wn. App. at 649-50.

Because we conclude DOC failed to provide meaningful notice, we need not address whether all of Sergeant Fletcher's claims were unsupported in law or fact.

We reverse the order imposing CR 11 sanctions against Sergeant Fletcher's attorney Thaddeus Martin.

WE CONCUR: