IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| MICHELLE MERCERI, | ) | No. 78876-1-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SHAWN CASEY JONES, | ) | |
| | ) | |
| Respondent. | ) | FILED: March 9, 2020 |

SCHINDLER, J.P.T.* — In Merceri v. Jones, No. 72615-3-I (Wash. Ct. App. Mar. 21, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/726153.pdf, we affirmed dismissal of the quiet title action Michelle Merceri filed against Shawn Casey Jones and imposition of CR 11 sanctions against Merceri and her attorneys. The mandate issued on May 6, 2016. On December 1, 2017, Merceri filed a CR 60(b) motion to vacate the judgment entered in the quiet title action. Merceri appeals denial of the motion to vacate, denial of the motion for reconsideration, and imposition of CR 11 sanctions for filing the motion to vacate. The court did not abuse its discretion in concluding the motion to vacate was not filed within a reasonable time and the delay in filing the motion was not factually or legally justified. We affirm denial of the motion to vacate and the decision to award of CR 11 sanctions. However, we remand to reconsider the amount of attorney fees imposed as CR 11 sanctions.

Hunts Point Property

The facts are more fully set forth in Merceri v. Jones, No. 72615-3-I (Wash. Ct. App. Mar. 21, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/726153.pdf, and will be repeated as necessary.

In 2006, Michelle Merceri asked her business partner Shawn Casey Jones to agree to co-sign the mortgage loan to purchase a house in Hunts Point and be identified as an owner on the title. In exchange, Merceri would pay Jones $15,000 and agreed to be responsible for making all payments on the loan and costs associated with the property. Merceri agreed to relieve Jones of liability on the loan after she either refinanced or sold the house. Jones co-signed the loan and was on the title for the property. Jones agreed that Merceri was entitled to any equity and profits from selling the house and that he would execute a quitclaim deed after Merceri refinanced or sold the house.

Merceri stopped making payments on the loan in 2008. The bank initiated foreclosure on the loan. On November 17, 2010, Merceri filed a Chapter 7 petition for bankruptcy. Merceri identified Jones as a lien creditor on the property. The bankruptcy court stayed the foreclosure.

In 2011, the Washington State Department of Transportation (WSDOT) condemned two lots between State Route 520 and Merceri's property. Hunts Point neighbors planned to file a lawsuit against WSDOT alleging the condemnation violated Hunts Point community covenants, conditions, and restrictions. Neighbors sent a letter to Merceri asking if she was interested in joining the lawsuit. Merceri forwarded the

letter to the bankruptcy trustee. In June 2011, the neighbors filed an inverse condemnation lawsuit against WSDOT.

The trustee unsuccessfully attempted to sell the Hunts Point property. On December 4, 2012, the bankruptcy court granted Merceri's motion to order the trustee to abandon the property as an asset in bankruptcy.

Quiet Title Action

On January 15, 2013, Merceri filed a quiet title and damages action against Jones. Merceri alleged Jones "has no interest in the Property and his name on the title is a cloud on title" that he refuses to release. Merceri alleged the "failure to release his interest in the Property, which he has testified, under oath, has been satisfied in full, constitutes a slander of title." Merceri sought an order quieting title to the property and an award of damages.

The order setting case schedule established a May 5, 2014 trial date, January 13, 2014 as the deadline to disclose witnesses, and March 17, 2014 as the discovery cutoff date.

On May 22, 2013, Merceri propounded interrogatories and requests for production to Jones. The interrogatories and requests for production include a request to supplement the discovery responses and that Jones provide information in support of a claim of privilege:

> These Discovery Requests are continuing in nature until this case is closed. Amended answers are to be served forthwith after additional information may become available to you, directly or indirectly, which would make incorrect, incomplete, non-comprehensive, or misleading any answer given.
> . . . .
> . . . [I]f you claim any privilege against disclosure of any of the above information with respect to any document, describe such document

distinctly to allow the party propounding these interrogatories to move the Court [to] compel its disclosure.

Interrogatory 8 states:

Please identify all complaints you made or which were made on your behalf to banks, mortgage companies, state or federal agencies or law enforcement, or other third parties regarding your allegations of misconduct by Michelle Merceri and/or Avista Escrow Company LLC.

Request for production 8 states, "Please produce all documents, including any statements, relating to the complaints identified in your answer to Interrogatory No. 8." Request for production 11 states, "Please produce all documents, including any statements that are related to this action, that were not produced by Plaintiff in response to Defendant[']s discovery requests."

Jones objected to interrogatory 8, request for production 8, and request for production 11 as "overly broad and unduly burdensome or expensive, and not reasonably calculated to lead to the discovery of admissible evidence."

Merceri filed a motion to compel. On October 18, 2013, King County Superior Court Judge William Downing granted the motion to compel. The court ordered Jones to respond to the discovery requests.

On November 4, 2013, Jones filed amended answers and responses. In response to interrogatory 8, Jones states:

1. Ryan Swanson law firm wrote various letters to Bank of America. Mr. Jones does not remember the specific dates and times, but has, pursuant to CR 33(c), produced copies of any such letters in his custody or control.
2. Police report to Edmonds re [Merceri]. Produced.
3. King County prosecutor - phone call, believed to be with Linda Williamson 206.296.9037 regarding forgery complaints.
4. Spoke with a Secret Service agent - relating to loan secured by Mr. Jones's Edmonds home.

In response to request for production 8, Jones states, "All documents in defendant's possession[,] custody[,] or control have been produced." In response to request for production 11, Jones states:

> Mr. Jones objects because Mr. Jones does not know what Ms. Merceri believes to be "related to this action." Subject to and without waiving the objection, Mr. Jones has produced all documents in his possession, custody, or control relating to the Hunts Point property.

Dismissal of Slander of Title Claim

On March 8, 2013, Merceri filed a motion for summary judgment in the quiet title action. Merceri sought entry of a declaratory judgment that she "is the sole owner of the Property, free and clear of any interest" of Jones and an award of damages and attorney fees and costs for failure to execute a quitclaim deed.

Jones filed a cross motion for summary judgment dismissal of the lawsuit. Jones argued that because he was liable as a co-signer on the loan, he had an interest in the property. Jones asserted no evidence supported the claim of slander of title.[1] Jones argued there was no claim that he made any false or malicious statements in reference to any pending sale or purchase of the property. Judge Downing denied Merceri's motion for summary judgment and Jones' motion to dismiss the quiet title action. However, the court granted partial summary judgment dismissal of the slander of title claim.

WSDOT Claim

On July 5, 2013, Merceri sent a demand letter to WSDOT asserting violation of the Hunts Point covenants and restrictions and diminution of the value of her property in

---

[1] "Slander of title is defined as: (1) false words; (2) maliciously published; (3) with reference to some pending sale or purchase of property; (4) which go to defeat plaintiff's title; and (5) result in plaintiff's pecuniary loss." Rorvig v. Douglas, 123 Wn.2d 854, 859, 873 P.2d 492 (1994).

the amount of $850,000. On July 18, WSDOT offered to pay $375,120 in "just compensation to the extent the value of your lot is affected by WSDOT's use of Lots 11 and 12 inconsistent with these covenants and by loss of your right to enforce the covenants against these two lots."

On January 7, 2014, Jones' attorney Matt Adamson sent a letter to the bankruptcy trustee's lawyer Rory Livesey with a copy to Merceri's attorneys. The letter asks Livesey whether the WSDOT claim violated the "automatic stay to pursue or collect any of those proceeds." The letter states, in pertinent part:

> Jones does not claim any right to equity or proceeds from the Merceri/Jones Property, but he is liable for the mortgage on that property, and is entitled to a say in how the property, and any proceeds from the property, including the condemnation proceeds, are disposed of. For example, if Jones and/or the lender pursue these funds, would that violate the stay?

Alleged Violation of Bankruptcy Discharge Injunction

In February 2014, Merceri filed a motion in bankruptcy court alleging Jones and his attorney Adamson violated the discharge injunction. Merceri alleged, in pertinent part:

> Jones and/or Adamson has contacted the Washington State Department of Transportation, the trustee's attorney Rory Livesey . . . ,[ ] Bank of America,[ a]nd Northwest Trustee Services falsely alleging Merceri is attempting to "scam" and "defraud" the trustee, falsely alleging the Property is vacant, and encouraging B[ank] of A[merica] and Northwest Trustee Services to foreclose.

Jones' attorney Adamson filed a declaration denying the allegations. Adamson states, in pertinent part:

> [M]y letter to Mr. Livesey asks whether it would violate the automatic stay if "Jones and/or the lender" pursued those proceeds. Thus, the reference is to a pursuit by (1) Jones and the Lender, or (2) just the lender. . . .

6

. . . Ms. Merceri next claims that I contacted the trustee to collect a discharged debt. I did contact the attorney for the trustee to disclose to the trustee what I believed to be assets of the estate that were not listed on debtor's schedules, and asked for the trustee's position on those assets.

In another declaration filed in bankruptcy court, Adamson described a December 2013 communication with the bankruptcy trustee's attorney:

In December 2013, I asked the bankruptcy trustee's attorney whether the trustee would seek to undo the December 2012 abandonment of the Hunts Point property because undoing the abandonment would terminate the quiet title lawsuit. . . .
. . . In December 2013, I called the . . . attorney for the foreclosure trustee to pursue an attempt to get the lender to accept a deed in lieu of foreclosure from Jones. The hope was that Jones could convey his interest to the bank, thus ending both his liability for the mortgage, and forcing an end to the quiet title lawsuit — again.

The bankruptcy court scheduled an evidentiary hearing for after the quiet title trial in superior court.

Motion To Disqualify Counsel

On April 10, 2014, Merceri filed a motion in superior court to shorten time to hold a hearing on her motion to disqualify opposing counsel, continue the quiet title trial, and engage in additional discovery. Merceri argued that the declarations Adamson filed in bankruptcy court contradicted his denial "under oath" that he did not make "any improper contacts." Merceri asserted Jones and Adamson made false allegations of fraud against her. Merceri also argued Jones did not supplement his answers to discovery "regarding complaints of misconduct, including e-mails."

In opposition, Jones argued that as a matter of law, any "alleged wrongdoing" by him or his attorney was "not relevant" to the quiet title action. Jones asserted:

[D]ocuments regarding allegations of a "scam" or "fraud" — do not exist. There are no unproduced non-privileged documents from Mr. Jones, or

7

anyone on his behalf, including Adamson, accusing Merceri or her attorneys of defrauding her creditors or the bankruptcy court.

Jones claimed the communications with the bankruptcy trustee's attorney are work product and protected by the common interest doctrine "because they relate to potential claims in which Jones and the trustee have a common interest." But Jones notes that "if the Court thinks" the e-mails with the bankruptcy trustee attorney "might be discoverable," he would provide the e-mails to the court for in camera review.

In his declaration in opposition to the motion to disqualify, Adamson states that Merceri and her attorney Susan Fullmer "knew I was accusing them of fraud" in the bankruptcy because "I wrote it in a brief in this court." Adamson asserted that "no non-privileged documents" responsive to discovery exist:

> I will now address the allegation that I hid documents. First, I have no non-privileged documents accusing Merceri or her attorneys of fraud or a scam except pleadings filed in court and served on them. . . .
> . . . As explained in the response brief, there are a number of reasons why I did not disclose my e[-]mails with the other attorneys. I did not lie about anything. . . . My e[-]mails were created in December 2013.

Judge Downing denied the motion to disqualify opposing counsel, continue the trial date, and engage in additional discovery. Judge Downing reserved ruling on Jones' motion for imposition of CR 11 sanctions to the trial court.

Trial in Quiet Title Action

The trial in the quiet title action began on May 6, 2014. Judge Helen Halpert presided over the two-day bench trial. In his trial brief, Jones asserted the WSDOT claim is "[o]ne of the reasons, if not the only one, that Ms. Merceri wants Mr. Jones off title . . . because [WSDOT] owes the property owners at least $375,120 for an inverse condemnation award arising out of the expansion of Highway 520." The court ruled the

WSDOT claim was not relevant to whether Merceri was entitled to an order quieting title to the property in her name.

Merceri and Jones were the only witnesses who testified at trial. The court admitted into evidence a number of exhibits. At the conclusion of the trial, Judge Halpert dismissed "[a]ll of Merceri's claims brought in this action" with prejudice. The court rejected Merceri's request to "compel Jones to execute a quit claim deed to be held in escrow." The court ruled Merceri "cannot remove Jones from title until the loan is repaid or Jones's liability for the loan is otherwise discharged per their agreement and because such an order would be inequitable." On June 6, 2014, Judge Halpert entered findings of fact and conclusions of law.

The findings of fact state Merceri "admitted the following facts":

a. Merceri consented to Jones being on title to the property.
b. Merceri and Jones have no enforceable contract(s) relating to how or when to sell the Property;
c. Merceri and Jones have no enforceable contract(s) relating to how or when to refinance the mortgage loan.
d. Jones never caused the failure of any refinance of the loan.
e. Jones has never caused the failure of any sale of the Property.

The court concluded the undisputed facts established Jones "has a legitimate interest in staying on title until the Loan is repaid in full, or until Jones is otherwise released from liability by the lender or as a matter of law."

On July 7, 2014, Jones filed a motion for attorney fees, CR 11 sanctions, and entry of a final judgment in the quiet title action.

On August 20, 2014, the court entered findings of fact, conclusions of law, and an order on the motion for attorney fees and CR 11 sanctions. The court granted in part

the motion for attorney fees:

> The court determined that an award for the entire amount of fees incurred is not appropriate because some fees were incurred in the satellite bankruptcy litigation and a substantial number of hours were expended in an attempt to resolve the legal issue between the parties through mediation and settlement talks. That is, both parties created the need to undo an untenable legal relationship, which certainly would have resulted in the expenditure of some attorneys' fees.

The court ordered Merceri's attorneys Mark Stern and Susan Fullmer to pay $4,000 in CR 11 sanctions for filing the motion to disqualify for the following reasons:

> Ms. Merceri moved to disqualify counsel on one-day's notice, falsely accusing him of being a "tool" for harassment and abuse. It is hard to imagine how attorneys can think it is acceptable to move to disqualify opposing counsel on one day's notice, while falsely accusing him of being a "tool" for non-intimate partner harassment and abuse.

The court concluded the quiet title lawsuit was legally and factually baseless:

> 1. Merceri's cause of action for slander of title was legally and factually baseless. Merceri's complaint does not state a claim for slander of title because it does not allege any false statements by Jones that affect any pending sale. Merceri also failed to present any material facts at summary judgment to support her claim. Filing a lawsuit for slander without even being able to raise a disputed material fact as to a false statement or even a pending sale is baseless.
> 2. Merceri's cause of action for quiet title was legally baseless. The material facts were undisputed. Merceri asked Jones to be on title and to co-sign the mortgage. They agreed Jones would not pay any money toward the house, and she would sell or refinance to get him off title. She had no plausible legal argument as to why a party can ask another to co-sign a loan and be on title and then sue to remove them from title while the loan is outstanding. On the other hand, Jones bears some responsibility for creating the situation as he signed a lending document falsely claiming he intended to live in the home.

The court awarded Jones attorney fees and costs in the amount of $20,338. The court entered a final judgment on August 20, 2014.

Merceri timely appealed dismissal of the quiet title lawsuit and imposition of CR 11 sanctions.

Bankruptcy Court Order Compelling Disclosure of E-Mails

Two days before the evidentiary hearing in bankruptcy court on June 20, 2014, Adamson for the first time provided a privilege log of his e-mail communications with the bankruptcy trustee's attorney Livesey. The log identifies the e-mails by 11 different dates between December 7, 2013 and May 5, 2014 where Adamson and Livesey e-mailed each other. With the exception of 2 dates, the privilege log states the "Nature/Subject Matter" of the e-mails is the WSDOT claim.

The bankruptcy court ruled that because the "communications with the trustee's attorney were not attempts to collect a debt from the debtor," Jones and Adamson did not violate the discharge injunction.

In late 2014, the bankruptcy trustee filed an adversary proceeding against Merceri, Jones, and the lender to determine whether the WSDOT claim was an asset of the bankruptcy estate. Merceri propounded discovery and requested production of documents, including the e-mails between Adamson and the bankruptcy trustee's attorney Livesey.

Livesey forwarded the discovery requests to Adamson, asking, "[W]hich discovery request calls for the e[-]mails between you and me." Adamson responded, "Since this is the third time she has sought these documents, and I dealt with it before, I will take the first shot at drafting a response." Adamson sent Livesey a draft response and privilege log. Adamson told Livesey, "You should create a formal privilege log on your letterhead or pleading paper from the Word document I sent you."

The trustee responded to the discovery requests and provided a privilege log on March 30, 2015. The trustee claimed the e-mails were not relevant and the e-mails were privileged and not subject to disclosure.

Merceri filed a motion to compel. Merceri submitted the privilege log Adamson prepared for the same e-mails in June 2014. Merceri argued the March 2015 privilege log contradicted the June 2014 privilege log. In opposition to the motion to compel, the trustee reiterated the e-mails were not relevant and the e-mails were privileged and not subject to disclosure. The trustee also states, "This is the third time, in three separate actions, that debtor has attempted to obtain the same few e[-]mails between counsel for Shawn Casey Jones and counsel for the trustee. The motion must be denied."

At the hearing on the motion to compel, Livesey conceded he did not intend the e-mail communications with Adamson to be confidential. Livesey admitted Adamson prepared the response and the March 2015 privilege log:

> [THE COURT:] . . . [I]t did appear that there was some communication and assistance from Mr. Adamson in preparing the response, almost complete assistance, if I can put it that way.
> MR. LIVESEY:   All I did was tone it down.

The bankruptcy court rejected the argument that the e-mails were not relevant and that the e-mails were subject to attorney-client, work product, or a common interest privilege. The court ordered the trustee to produce the e-mails and awarded Merceri attorney fees and costs under CR 37. The order states, in pertinent part:

> This matter came on regularly for hearing before the above-signed Judge of the above entitled court upon Debtor's Motion for Order Compelling Discovery from Plaintiff Trustee Ron Brown ("the Trustee"). The Court considered the records and files herein, including the Trustee's March 2015 privilege log and the June 2014 privilege log prepared by attorney Matt Adamson (counsel for defendant Shawn Casey Jones)

12

regarding the same set of e-mails, and having heard the argument of counsel, and deeming itself fully advised, the court finds:

. . . .

3.    The Trustee has not produced any responsive documents to requests for production #4 and #5; and

4.    The requested documents are relevant to this adversary proceeding; and

5.    The e-mail messages listed on the Trustee's privilege log ([Docket] # 23-1) are not subject to the attorney-client privilege, the work-product privilege, or the common interest privilege; and

6.    The e-mail messages described in the Trustee's privilege log were not intended to be confidential[.]

. . . .

NOW, THEREFORE, it is ORDERED

8.    That the Trustee and the Trustee's counsel, Rory Livesey ("Livesey"), shall, not later than April 14, 2015 (regardless of when this Order is entered), produce to the Debtor, Michelle Catherine Merceri:

8.1    all materials responsive to each of the outstanding discovery requests, to include each and every record of communications between the Trustee and/or his attorney Livesey, on the one hand, and Matt Adamson and/or Shawn Casey Jones ("Jones"), on the other hand . . . , including but not limited to

8.1.1.    e-mail messages; and

8.1.2.    billing records of phone conversations.[2]

The trustee produced approximately 80 e-mails between Adamson and Livesey from December 7, 2013 through April 9, 2015. In the December 7, 2013 e-mail, Adamson accused Merceri of not disclosing the WSDOT claim in the bankruptcy proceeding and filing the quiet title action in order to obtain payment for the WSDOT claim. Adamson urged Livesey to "get the abandonment undone" and pursue the WSDOT claim. The e-mail states, in pertinent part:

Because Jones is on title, [Merceri] cannot get the money unless he gives up his interest. Thus, the motive for the quiet title action. . . .

I believe that an abandonment can be undone if the debtor failed to disclose a claim affecting the issue. See attached cases as some examples.

. . . .

---

[2] Emphasis in original.

I do recognize that the lender with the deed of trust on the property will likely make a claim to the proceeds (they are currently unaware of the claim), and that maybe the proceeds would not benefit the estate, but only the one secured creditor. . . . In any event, if the claim is large enough, and with the increase in the value of the property, if the abandonment was reversed, the proceeds from the claim plus from a sale could be sufficient to pay the secured claims in full. . . .

It would obviously benefit Jones if the property (residence and the claim) went back into the estate as the state court quiet title case would be dismissed if the property reverted to the trustee, and perhaps Jones would also get the $15,000 that the Court order said he would be paid from the proceeds of the Hunts Point property.

Shortly after producing the e-mails, the trustee dismissed the adversary proceeding.

Court of Appeals Decision in Merceri v. Jones

On March 21, 2016, we affirmed dismissal of the quiet title action and the decision to impose CR 11 sanctions. Merceri, No. 72615-3-I, slip op. at 1. We concluded the admitted and unchallenged findings supported dismissal of the quiet title action with prejudice. Merceri, No. 72615-3-I, slip op. at 9-10, 16. We concluded the unchallenged facts supported imposition of CR 11 sanctions:

Merceri does not dispute the facts underlying that conclusion either: that she moved to disqualify Adamson on only one day's notice, accusing him of being a "tool" for nonintimate partner harassment and abuse because he attempted to negotiate a deed in lieu of foreclosure that would have brought an end to this lawsuit.

Merceri, No. 72615-3-I, slip op. at 14. The mandate issued on May 6, 2016.[3]

---

[3] In April 2016, the Washington State Bar Association (WSBA) Office of Disciplinary Counsel opened an investigation and on August 23, 2016, Jones filed a bar complaint against Merceri's attorneys. The WSBA dismissed the complaint on November 7, 2017.

14

Motion To Vacate Judgment in Quiet Title Action

On December 1, 2017, Merceri filed a motion under CR 60(b)(4) and (11) to vacate the order denying her motion to disqualify the award of CR 11 sanctions and entry of the judgment in the quiet title action. Merceri argued Jones and Adamson improperly withheld and misrepresented the e-mails between Adamson and the bankruptcy trustee's attorney Livesey were privileged. Merceri argued the misrepresentations were material to the decision to deny the motion to disqualify the award of CR 11 sanctions and entry of the summary judgment order dismissing the slander of title claim and the judgment in the quiet title action.

Jones filed a response in opposition to the motion to vacate. Jones asserted Adamson disclosed the existence of the e-mails and the e-mails were privileged and not subject to discovery. Jones notes that he offered to submit the e-mails to the court in camera review.

Jones filed a motion to impose CR 11 sanctions against Merceri and her attorney for filing the motion to vacate. Jones submitted extensive proposed findings of fact, conclusions of law, and an order awarding attorney fees as CR 11 sanctions. Jones noted the CR 11 motion for the same day as the motion to vacate.

Merceri filed a motion to continue the hearing on the motion for CR 11 sanctions. Merceri argued the court should rule on the motion to vacate before considering the request to impose CR 11 sanctions. Jones opposed the motion to continue the hearing. Jones argued the motion to vacate was "related" to the motion for CR 11 sanctions and his "motion is based on the fact that the existence of the e[-]mails was disclosed and thus Merceri's single foundational fact alleged in support of her motion is demonstrably

false." Judge Ken Schubert denied the motion to continue the hearing on the CR 11 motion.

Merceri filed a sealed brief and her attorney filed a sealed declaration in opposition to the motion to impose CR 11 sanctions for filing the motion to vacate. Merceri also submitted the declarations of two other attorneys in opposition to imposition of CR 11 sanctions for filing the motion to vacate.

The lengthy March 9, 2018 hearing focused exclusively on the CR 60(b) motion to vacate. At the conclusion of the hearing, the court reserved ruling on the motion to impose CR 11 sanctions and entered an order denying the motion to vacate.

Order Denying Motion for Reconsideration and Awarding CR 11 Sanctions

On March 19, 2018, Merceri filed a motion for reconsideration under CR 59(a)(1) (irregularity in the proceedings), CR 59(a)(3) (surprise which ordinary prudence could not guard against), and CR 59(a)(7) (decision not supported by evidence or is contrary to law). Merceri argued that she requested and the case law required the court to conduct an evidentiary hearing. Merceri asserted the decision to deny her motion to vacate was not supported by the record and was contrary to law. Merceri argued Jones violated CR 26 by not responding to the discovery requests and improperly claiming privilege.

On July 2, 2018, the court entered the "Order Denying Plaintiff's Motion for Reconsideration." The order states, "Due to the length of the hearing, the Court did not have time to orally provide the basis for its ruling. Accordingly, the Court does so here." The court rejected Merceri's argument that she filed the CR 60(b) motion to vacate within a reasonable time after the mandate issued on May 6, 2016. The court

16

concluded Merceri "had not brought her motion for relief under CR 60(b)(4) and (11) within a reasonable time based on the 32 months it took her to bring her motion" after obtaining copies of the e-mails between Adamson and Livesey in April 2015. The court also cited RAP 7.2(e) to state Merceri "did not need to wait for the resolution of her appeal" before filing the motion to vacate under CR 60(b)(4) and (11). "[T]he Rules of Appellate procedure allowed plaintiff to bring a motion for reconsideration pursuant to CR 60 during the pendency of her appeal." The court also rejected "the desire to wait for the outcome of a bar complaint" as a reason to delay filing the motion to vacate. "This Court does not find that rationale persuasive."

The court also concluded Merceri did not establish by clear, cogent, and convincing evidence misrepresentation or misconduct that "led to the entry of the orders at issue." The court found prejudice "due to the fact that in the intervening time between April 2015 and December 2017," Judge Halpert had recused and Judge Downing had retired.

On the same day and without modification, the court entered the proposed "Findings of Fact, Conclusions of Law, and Order Granting Defendant's Motion for Fees and Sanctions" previously submitted by Jones. The court ordered Merceri and her attorney Fullmer to pay attorney fees and costs of $26,820 as CR 11 sanctions for filing the motion to vacate.

Appeal of Denial of Motion To Vacate and Award of CR 11 Sanctions

Merceri appeals (1) denial of the CR 60(b)(4) motion to vacate the judgment in the quiet title action,[4] (2) denial of her motion for reconsideration, and (3) the decision to

---

[4] On appeal, Merceri does not challenge the CR 60(b)(11) ruling.

impose CR 11 sanctions for filing the CR 60(b) motion to vacate.[5]

Standard of Review

We review the decision on a CR 60(b)(4) motion to vacate and denial of the motion for reconsideration for manifest abuse of discretion. Jones v. City of Seattle, 179 Wn.2d 322, 360, 314 P.3d 380 (2013); Haley v. Highland, 142 Wn.2d 135, 156, 12 P.3d 119 (2000); Martini v. Post, 178 Wn. App. 153, 161, 313 P.3d 473 (2013). We review the decision of a trial court to impose CR 11 sanctions for an abuse of discretion. Biggs v. Vail, 124 Wn.2d 193, 197, 876 P.2d 448 (1994); In re Recall of Lindquist, 172 Wn.2d 120, 141, 258 P.3d 9 (2011).

A court abuses its discretion "only if there is a clear showing" that the decision is manifestly unreasonable or based on untenable grounds or untenable reasons. Moreman v. Butcher, 126 Wn.2d 36, 40, 891 P.2d 725 (1995). A discretionary decision is based on untenable grounds or untenable reasons if the trial court "relies on unsupported facts or applies the wrong legal standard." Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006). A decision is manifestly unreasonable if " 'the court, despite applying the correct legal standard to the supported facts, adopts a view that no reasonable person would take.' " Mayer, 156 Wn.2d at 684[6] (quoting State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)). Although the court's discretion may result in a decision upon which reasonable minds may differ, it must be upheld if it "is within the bounds of reasonableness." Lindgren v. Lindgren, 58 Wn. App. 588, 595, 794 P.2d 526 (1990).

---

[5] Merceri filed a motion to strike portions of the response brief. Because Merceri had the opportunity to file a reply brief, we deny the motion to strike. Engstrom v. Goodman, 166 Wn. App. 905, 909 n.2, 271 P.3d 959 (2012); Prostov v. Dep't of Licensing, 186 Wn. App. 795, 824 n.26, 349 P.3d 874 (2015).

[6] Internal quotation marks omitted.

We review a trial court's findings for substantial evidence. Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). Substantial evidence is the quantum of evidence sufficient to persuade a rational fair-minded person the premise is true. Sunnyside, 149 Wn.2d at 879.

Evidentiary Hearing on Motion To Vacate

Merceri contends the court erred in denying her request for an evidentiary hearing on the motion to vacate. Merceri cites CR 60(e) and In re Marriage of Maddix, 41 Wn. App. 248, 703 P.2d 1062 (1985), to argue the court must conduct an evidentiary hearing when facts are in dispute.

Under CR 60(e)(1), a motion to vacate a judgment shall identify the grounds for relief and the party must submit an affidavit identifying the facts or errors in support of the motion. CR 60(e)(2) provides:

> [T]he court shall enter an order fixing the time and place of the hearing thereof and directing all parties to the action or proceeding who may be affected thereby to appear and show cause why the relief asked for should not be granted.

In Maddix, Division Three concluded that because the affidavits of the parties "raise an issue of fact which cannot be resolved without the taking of testimony," the court "erred in vacating the judgment without first hearing and weighing testimony regarding fraud, misrepresentation or other misconduct." Maddix, 41 Wn. App. at 252.

In In re Marriage of Irwin, 64 Wn. App. 38, 61, 822 P.2d 797 (1992), we held the decision to allow testimony at a hearing "is not the general rule and is discretionary." We concluded, "[N]one of the authorities cited by the Maddix court" and "nothing in CR 60(e)(2) appears to indicate that live testimony is required." Irwin, 64 Wn. App. at 61.

We adhere to our decision in Irwin and conclude the court did not abuse its discretion in denying Merceri's request for an evidentiary hearing.[7]

Due Process

Merceri contends denial of her motion to continue the hearing on CR 11 sanctions violated her right to due process. Due process requires notice and the opportunity to be heard before the court imposes CR 11 sanctions. See Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 224, 829 P.2d 1099 (1992). The uncontroverted record establishes Merceri and her attorney had notice and the opportunity to respond to the request for CR 11 sanctions.

CR 60(b)(4) Motion To Vacate

CR 60(b)(4) permits relief from an order or judgment for "[f]raud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." "The rule is aimed at judgments which were unfairly obtained, not at those which are factually incorrect." Peoples State Bank v. Hickey, 55 Wn. App. 367, 372, 777 P.2d 1056 (1989). A party has the burden to show by clear, cogent, and convincing evidence that the adverse party obtained a judgment or order through fraud, misrepresentation, or misconduct. Hickey, 55 Wn. App. at 371-72. The fraud, misrepresentation, or misconduct "must cause the entry of the judgment such that the losing party was prevented from fully and fairly presenting its case or defense." Lindgren, 58 Wn. App. at 596.[8]

---

[7] We note Merceri made the request for the first time in her reply brief and did not raise the request during the lengthy hearing.

[8] Emphasis in original.

20

A party must file a CR 60(b)(4) motion within a reasonable time. CR 60(b); Luckett v. Boeing Co., 98 Wn. App. 307, 311, 989 P.2d 1144 (1999). The "reasonable time" requirement depends on the facts and circumstances of each case. Luckett, 98 Wn. App. at 312. The determination of whether a party files a motion to vacate a judgment or order within a reasonable time is the critical period between when the moving party became aware of the judgment and the filing of the motion. Luckett, 98 Wn. App. at 312. Major considerations in determining timeliness are (1) whether the moving party has good reasons for failing to take appropriate action sooner and (2) prejudice to the nonmoving party from the delay. Luckett, 98 Wn. App. at 312.

Here, the undisputed record establishes the court entered the final judgment in the quiet title action on August 20, 2014 and Merceri timely filed an appeal. In April 2015, the bankruptcy court rejected the claim of privilege and ordered the trustee to produce the e-mails between Jones' attorney Adamson and the bankruptcy trustee's attorney Livesey. We filed the opinion in Merceri, No. 72615-3-I, on March 21, 2016. The mandate issued on May 6, 2016. Merceri did not file the CR 60(b)(4) motion to vacate until December 1, 2017.

Merceri cites Tatham v. Rogers, 170 Wn. App. 76, 283 P.3d 583 (2012), to argue it was reasonable to wait until the mandate issued before filing the CR 60(b)(4) motion to vacate. Tatham is distinguishable. In Tatham, we concluded a nine-month delay between hiring a private investigator and filing the CR 60(b) motion to vacate was reasonable because:

> [The appellant] had already moved for reconsideration and filed his notice of appeal before he learned of the grounds for the posttrial motion; it was

already clear to [the respondent] that she could not be sure of the finality of the trial court's disposition until the appeal was concluded.

Tatham, 170 Wn. App. at 98-99.

Merceri also cites Federal Rule of Civil Procedure (FRCP) 60 to argue she filed the CR 60(b)(4) motion to vacate within a reasonable time. FRCP 60(b) does not support her argument. FRCP 60(b) mirrors CR 60(b) and allows the court to grant relief from judgment for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." FRCP 60(b)(3). However, unlike CR 60(b), FRCP 60(c)(1) requires a party to file a motion to vacate under FRCP 60(b)(3) "no more than a year after the entry of the judgment." FRCP 60(c)(1) states, "Timing. A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."[9]

We conclude the court did not abuse its discretion in concluding that filing the CR 60(b)(4) motion to vacate more than 18 months after the mandate issued was not reasonable. RAP 7.2(e)(2) supports the court's finding that Merceri could have filed the motion to vacate in superior court while the appeal was pending.[10] The court also did not abuse its discretion in rejecting the argument that it was reasonable to wait until the bar complaint against her attorney was resolved before filing the motion to vacate. And

---

[9] Emphasis in original.

[10] RAP 7.2(e)(2) states, in pertinent part:

The trial court has authority to hear and determine . . . actions to change or modify a decision that is subject to modification by the court that initially made the decision. The postjudgment motion or action shall first be heard by the trial court, which shall decide the matter. If the trial court determination will change a decision then being reviewed by the appellate court, the permission of the appellate court must be obtained prior to the formal entry of the trial court decision. A party should seek the required permission by motion.

the record supports finding prejudice to the nonmoving party by waiting until December 1, 2017 to file the motion to vacate.

CR 11 Sanctions

Merceri contends the findings of fact and conclusions of law do not support imposition of CR 11 sanctions against her and her attorney for filing the CR 60(b)(4) motion to vacate.

CR 11(a) provides, in pertinent part:

> Every pleading, motion, and legal memorandum . . . shall be dated and signed . . . . The signature of a party or of an attorney constitutes a certificate by the party or attorney that the party or attorney has read the pleading, motion, or legal memorandum, and that to the best of the party's or attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is well grounded in fact; (2) it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law; . . . and (4) . . . . [i]f a pleading, motion, or legal memorandum is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or legal memorandum, including a reasonable attorney fee.

"The purpose behind CR 11 is to deter baseless filings and to curb abuses of the judicial system." Bryant, 119 Wn.2d at 219.[11] "CR 11 is not meant to act as a fee shifting mechanism, but rather as a deterrent." MacDonald v. Ford, 80 Wn. App. 877, 891, 912 P.2d 1052 (1996).

A filing is baseless if it is not well grounded in fact, existing law, or a good faith argument for the extension of existing law. Hicks v. Edwards, 75 Wn. App. 156, 162-63,

---

[11] Emphasis in original.

876 P.2d 953 (1994). But even a baseless filing is not subject to CR 11 sanctions unless the trial court also finds that the attorney who signed and filed the pleading, motion, or legal memorandum failed to conduct a reasonable inquiry into the factual and legal basis for the filing. Bryant, 119 Wn.2d at 220; MacDonald, 80 Wn. App. at 884. The court must evaluate an attorney's conduct under an objective reasonableness standard by asking whether a reasonable attorney in similar circumstances would believe that the attorney's actions were factually and legally justified. Bryant, 119 Wn.2d at 220-21.

Substantial evidence supports the CR 11 finding that there was no factual or legal "basis for the delay" in filing the CR 60(b)(4) motion to vacate the August 20, 2014 judgment entered in the quiet title action. Under an objective standard of reasonableness, filing the motion to vacate 32 months after obtaining the e-mails and more than 18 months after the mandate issued was not factually and legally justified. But because many of the other findings of fact and conclusions of law are not supported by the record or the correct legal standard, we remand to reconsider the amount of CR 11 sanctions. For example, the findings emphasize that Jones and Adamson disclosed the existence of the e-mails to Merceri. But the findings ignore the failure to respond to the discovery requests and produce the e-mails. A discovery violation can constitute misconduct for purposes of CR 60(b)(4). Roberson v. Perez, 123 Wn. App. 320, 332-33, 96 P.3d 420 (2004).

CR 26 allows broad discovery. Magaña v. Hyundai Motor Am., 167 Wn.2d 570, 584, 220 P.3d 191 (2009). CR 26(b)(1) provides, in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it

relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

"A party must answer or object to an interrogatory or a request for production." Magaña, 167 Wn.2d at 584; CR 26(b)(1). If the party does not seek a protective order, then the party must respond to the discovery request. CR 37(d); Magaña, 167 Wn.2d at 584. "It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." CR 26(b)(1).

The record establishes the e-mails were relevant and responsive to the discovery requests that included a request to supplement and provide a privilege log. The uncontroverted record shows Jones did not supplement the answers to interrogatories and requests for production by claiming privilege and providing a privilege log. Contrary to the findings, a claim of privilege is determined on a case-by-case basis and the burden of showing the privilege applies falls on Jones as the party asserting the privilege. VersusLaw, Inc. v. Stoel Rives, LLP, 127 Wn. App. 309, 332, 111 P.3d 866 (2005). The bankruptcy court ruled the same assertion of privilege was without merit and baseless. The findings of fact and conclusions of law also heavily rely on the CR 11 sanctions imposed in the quiet title action. In Biggs, the Washington Supreme Court notes that imposition of a previous CR 11 sanction is "presumptively unreasonable." Biggs, 124 Wn.2d at 202 n.3.

"In deciding upon a sanction, the trial court should impose the least severe sanction necessary to carry out the purpose of the rule." Biggs, 124 Wn.2d at 197. "Should a court decide that the appropriate sanction under CR 11 is an award of attorney fees, it must limit those fees to the amounts reasonably expended in responding to the sanctionable filings." Biggs, 124 Wn.2d at 201. Justification for imposition of CR 11 sanctions " 'must correspond to the amount, type, and effect of the sanction applied.' " MacDonald, 80 Wn. App. at 892 (quoting Thomas v. Capital Sec. Servs., Inc., 836 F.2d 866, 883 (5th Cir. 1988)). On remand, the court shall reconsider the amount of CR 11 sanctions.[12]

Attorney Fees on Appeal

Jones requests attorney fees on appeal under RAP 18.9(a). RAP 18.9(a) allows this court to award attorney fees for frivolous appeals. An appeal is frivolous when in consideration of the entire record, there are no debatable issues over which reasonable minds could differ and the appeal "is so devoid of merit that there is no possibility of reversal." Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hr'gs Bd., 170 Wn.2d 577, 580, 245 P.3d 764 (2010). Because Merceri raises debatable issues, we decline to award attorney fees on appeal.

We affirm the decision to deny the CR 60(b)(4) motion to vacate on the grounds that the motion was not filed within a reasonable time. We conclude the court did not

---

[12] We reject Merceri's request to remand to a different judge. "The test for determining whether the judge's impartiality might reasonably be questioned is an objective test that assumes a reasonable observer knows and understands all the relevant facts." State v. Solis-Diaz, 187 Wn.2d 535, 540, 387 P.3d 703 (2017). The record does not show either actual or potential bias. Solis-Diaz, 187 Wn.2d at 540.

No. 78876-1-I/27

abuse its discretion by imposing CR 11 sanctions but remand to reconsider the amount of CR 11 sanctions.

WE CONCUR:

Schindler, J.P.T.

Mann, A.C.J.

* The Washington Supreme Court has appointed Judge Schindler to serve as a judge pro tempore pursuant to RCW 2.06.150.

27